```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **WILLIAM E. DUGAN,** *et al.*, | |
|                Plaintiffs, | |
|    v. | |
| **CITY OF WEST CHICAGO,** | Case No. 08 C 2223 |
|    Defendant-Counterplaintiff, | Hon. Harry D. Leinenweber |
|    v. | |
| **INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150,** | |
|                Counterdefendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Counterdefendant International Union of Operating Engineers' Motion for Reconsideration of the Court's earlier denial of its Motion to Dismiss the Counterclaim. For the following reasons, the Union's Motion is denied.

### I. BACKGROUND

The instant dispute arises out of an action brought by the Trustees of the Midwest Operating Engineers Welfare Fund (the "Fund") against the City of West Chicago (the "City"). The Fund claims that the City has breached its obligations under the Employee Retirement Income Security Act of 1974 ("ERISA") to make payment of contributions due to the Fund and/or submit contribution reports to the Fund in a timely manner. The City filed a First Amended Counterclaim (the "Counterclaim") against the Fund and the

International Union of Operating Engineers, Local 150 (the "Union"), seeking, among other things, joinder of the Union and a declaratory judgment clarifying the City's and the Union's obligations under the Agreement Between City of West Chicago and International Union of Operating Engineers, Local 150, 2005-2009 (the "Collective Bargaining Agreement" or "CBA").

The Union moved to dismiss the City's Counterclaim and argued, for the first time in its reply brief, that the Counterclaim is subject to the arbitration provision found in Article V, entitled "Grievance Procedure," of the Collective Bargaining Agreement. Because the Union raised its arbitration defense for the first time in its reply brief, the Court refused to consider it and denied the Union's motion to dismiss on December 29, 2008. Shortly thereafter, on January 8, 2009, the Union filed the pending Motion for Reconsideration asking the Court to reconsider its denial of the Union's motion to dismiss on the grounds that the Union did not waive its arbitration defense by raising it for the first time in its reply brief and that the Court erred in its joinder of the Union pursuant to Federal Rule of Civil Procedure 20.

At the presentment of the Union's Motion for Reconsideration on January 15, 2009, the Court denied the Union's Motion with respect to the joinder issue and but reserved ruling and set a briefing schedule on the Union's arbitration defense. Thus, the only issues now before the Court are (1) whether the Union waived its arbitration defense by raising it for the first time in its reply brief in support of its

motion to dismiss the Counterclaim and (2) whether the Counterclaim is arbitrable under the terms of the CBA.

## II.  DISCUSSION

### A. Standard of Review

The Court has inherent power to modify or rescind interlocutory orders prior to final judgment.  *See Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir., 1985), citing *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562 (7th Cir., 1982).  Reconsideration of an interlocutory order is committed to the Court's sound discretion.  *See Cima v. Wellpoint Health Networks, Inc.*, No. 05-4127, 2008 WL 4831676, at *1 (S.D.Ill., 2008).  However, "motions for reconsideration generally are not encouraged [because] a district court's rulings are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."  *Id.*  (internal citations omitted). Nonetheless, reconsideration will be granted where the court has misunderstood a party, the court has made a decision outside the adversarial issues presented to the court by the parties, the court has made an error of apprehension (not of reasoning), a significant change in the law has occurred, or significant new facts have been discovered.  *Id.*

### B. Waiver of the Arbitration Defense

The Court turns now to the question of whether the Union waived its arbitration defense by asserting it for the first time in its reply brief in support of its motion to dismiss the Counterclaim.  In

determining whether a party has waived the right to enforce an arbitration clause, the court must determine whether, based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate. *Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 616 (7th Cir., 2009). That analysis encompasses a variety of factors, and the court should give significant weight to a party's diligence or lack thereof. *Id.* It is not enough to demonstrate any conduct inconsistent with an intent to seek arbitration and it is well-settled that a party does not waive its right to seek arbitration merely by filing a motion to dismiss. *Id.*; *Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 726 (7th Cir., 2004). Instead, the focus is properly on the actions taken as a whole, and whether they are consistent with an intent to arbitrate. *Armstrong*, 552 F.3d at 616. Factors which weigh in favor of finding waiver include where party participated in pretrial activities such as discovery prior to invoking the arbitration clause or unreasonably delayed in making its arbitration demand. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir., 2008).

The only action the Union has taken in this case consisted of filing a motion to dismiss and the Union asserted its right to arbitrate in the briefing on that motion. Contrary to the Union's assertions, the Union could have, and should have, raised its arbitration defense in its initial memorandum in support of its motion to dismiss because the Counterclaim seeks clarification of the

parties' obligations under the CBA. The Union admitted as much in its initial memorandum when it characterized the Counterclaim as asking the Court for an order "[d]eclaring the obligations of the respective parties under the CBA." While the Union's failure to raise its arbitration defense until its reply brief has resulted in a separate briefing schedule on the arbitration defense and has wasted the Court's and the parties' time, the Union has taken no other action inconsistent with the intent to arbitrate. Accordingly, the Union has not waived its arbitration defense.

### C. Arbitrability of the Counterclaim

The Court turns now to whether the substance of the Counterclaim is subject to the CBA's arbitration clause. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962), citing *United Steelworkers*, 363 U.S. at 582. Thus, parties are bound to arbitrate only those disputes which they have bound themselves to arbitrate under a fair construction of their Collective Bargaining Agreement. *Faultless Division v. Local Lodge No. 2040 of*

*Dist. 153, Intern. Ass'n. Of Machinists and Aerospace Workers*, 513 F.2d 987, 990 (7th Cir., 1975).

The Seventh Circuit and courts within this District repeatedly have recognized that an arbitration clause found within a CBA's employee-oriented grievance procedure that gives only the union the option of proceeding to arbitration does not apply to employer-initiated disputes. *See Teledyne Wisconsin Motor v. Local 283, United Autom., Aerospace, and Agr. Implement Workers of America, UAW*, 530 F.2d 727 (7th Cir., 1976); *Faultless Division*, 513 F.2d 987; *Rental Services Corp. USA, Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO*, No. 99-5094, 1999 WL 1144904 (N.D.Ill., Dec. 9, 1999); *United Parcel Service, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 705*, No. 95-6304, 1998 WL 699670 (N.D.Ill., Sept. 30, 1998). Although dispositive of the arbitrability issue, the parties failed to bring any of the above-cited case law to the attention of the Court in their briefing on the pending Motion for Reconsideration.

In *Faultless Division*, the company sued the union over a work stoppage which, the company argued, violated the "no strike" provision of the parties' CBA. The CBA in that case provided a grievance procedure whereby employees could submit disputes to union representatives and, eventually, to company representatives. *Faultless Division*, 513 F.2d 987, 988-89. If the grievance still was

not resolved after presenting it to the company, "[t]he company shall be notified in writing by the Union of its intention to arbitrate said grievance." *Faultless Division*, 513 F.2d 987, 989. The CBA's only discussion of arbitration was in the context of the employee-oriented grievance procedure which gave only the union, and not the company, the option of proceeding to arbitration. *Id.*

Applying traditional contract principles, the Seventh Circuit held in *Faultless Division* that the CBA's grievance and arbitration procedure applied only to employee- and union-initiated grievances and noted that it had been unable to find any language in the entire CBA calling for a different conclusion. *Id.* at 990. The court acknowledged the principle annunciated in *United Steelworkers* that doubts over arbitrability should be resolved in favor of arbitration but found that "there is no occasion to resort to this congressional policy (favoring arbitration) in a case where the contract, fairly read as a whole, is not susceptible to a construction that the parties bound themselves to arbitrate the dispute before the court." *Id.* at 991 (citation omitted).

In *Teledyne*, the company sued the union over a work stoppage and the union argued that the CBA required arbitration of the company's claim. There, the CBA set forth a step-by-step procedure under which employees and the union could initiate grievances and eventually present them to the company. *Teledyne*, 530 F.2d at 733. This procedure culminated in arbitration and the CBA provided, "[s]hould any dispute, differences or grievances arising because of

interpretation of the contract fail to have been concluded in the above steps within ten (10) working days . . . the matter may be referred to a mutually agreed upon arbitrator." *Id.* The court declined to order arbitration because the CBA did not contain any provision giving the employer the right to initiate arbitration and instead created "a sole option in favor of the union in regard to the question of when a particular disagreement is to be arbitrated." *Id.* at 732.

The CBA in the instant case is similar to the CBAs examined by the Seventh Circuit in *Faultless Division* and *Teledyne*. Article V of the CBA, entitled "Grievance Procedure," broadly defines a "grievance" as "a dispute or difference of opinion concerning the interpretation or application of the express provisions of this Agreement." Article V then sets forth a three-step procedural mechanism by which employees and the Union may file and pursue grievances against the City. The grievance procedure commences with Step 1 when the affected employee or the Union presents a written grievance to the employee's division head. If the grievance is not resolved at Step 1 the Union may appeal the grievance to the employee's Department Head in Step 2 and the City Administrator in Step 3. According to Section 5.3 of the CBA, "[a] grievance not settled in Step 3 may be appealed by the Union to arbitration by serving on the city not later than twenty-one calendar days after the reply of the City Administrator or the City Administrator's designee, a written request to arbitrate."

Thus, the CBA's grievance procedure contemplates arbitration of unresolved employee or Union grievances at the Union's option only. The CBA does not provide any procedure, in Article V or elsewhere in the agreement, for the City to pursue a dispute against an individual employee or the Union. Nor does the CBA specify any circumstances under which the City has the right or the obligation to refer a dispute to arbitration. Under the reasoning of *Faultless Division* and *Teledyne*, the limitation of arbitration to unresolved employee grievances, and even then only at the Union's option, and the absence of any CBA provision empowering the City to initiate arbitration indicates that the parties did not agree to arbitrate City-initiated disputes such as the Counterclaim.

In support of its position that the Counterclaim is arbitrable, the Union cites a case from the Northern District of Illinois, *Standard Brands Inc. v. Maltsters, Laborers, Syrup, Yeast, Food & Vinegar Workers*, No. 78-3651, 1979 U.S. Dist. LEXIS 13348 (N.D.Ill., Mar. 30, 1979). Article 18 of the CBA in *Standard Brands*, entitled "Grievance and Arbitration," contained the following introductory language, "Any and all disputes, grievances, or matters of interpretation which arise during the terms of the Contract shall be settled in accordance with the Grievance and Arbitration procedure." *Standard Brands*, 1979 U.S. Dist. LEXIS 13348, at *1-2. The remainder of Article 18 set forth a step-by-step employee-oriented grievance procedure culminating in arbitration. *Id.* The court held that the CBA's failure to set forth a procedure for employer-initiated

disputes did not indicate that the parties intended for such disputes to be non-arbitrable given the sweeping "any and all disputes" language of Article 18. *Id.* at \*3-4. The *Standard Brands* court did not address or cite *Faultless Division* or *Teledyne* anywhere in its opinion.

The Court does not find the reasoning of *Standard Brands* persuasive on the issue of the arbitrability of the Counterclaim. The court's holding in that case relied upon the sweeping "any and all disputes" language found in the CBA. The CBA at issue in this case has no such language and, in fact, its discussion of arbitration is strictly limited to "[a] grievance not settled in Step 3" of the employee-oriented grievance procedure and even then only at the Union's option.

The Union also argues that the CBA excludes certain types of disputes from the Article V grievance and arbitration procedure and, because the CBA contains no express exclusion for employer grievances, the CBA must contemplate arbitration of the City's Counterclaim. The Union's reasoning is faulty. The CBA expressly excludes four types of disputes from the grievance and arbitration procedure: those arising under Section 1.2 "New classifications," Section 2.1 "Non-Discrimination," Section 4.6 "Fair share," and Section 11.3 "Terms of plan to govern." However, each of these sections of the CBA contemplates grievances initiated by employees or the Union, and not the City, which is entirely consistent with the Court's conclusion that the CBA's grievance and arbitration procedure

- 10 -

applies only to employee-and Union-initiated grievances.  The Union has not cited to, and the Court has not found, any language in the CBA that reasonably could lead to a different conclusion.  The Counterclaim simply is not arbitrable.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Counterdefendant International Union of Operating Engineers' Motion for Reconsideration is denied.
**IT IS SO ORDERED.**

	_____
	Harry D. Leinenweber, Judge
	United States District Court

**DATE:** 3/19/2009